# IN RE ESTATE OF A. J. LITTEER.

ERNEST LEWIS, Appellant, v. W. C. BROWN, State Treasurer, Appellee.

**TAXATION:** Collateral Inheritance Act—Conveyances Effective
1  Prior to Grantor's Death. The Collateral Inheritance Tax Act, which, prior to Chap. 68, Acts of the Thirty-fourth General Assembly, provided for a designated tax on property passing to collateral heirs "by will * * * or by deed, grant, sale, or gift made or intended to take effect in possession or in enjoyment *after the death of the grantor or donor,*" does not authorize the assessment of such tax on a conveyance which became fully effective by possession and enjoyment in the grantee prior to the death of grantors.

**JUDGMENT:** Conclusiveness—Collateral Proceedings. A judgment
2  or decree, in an action between rival claimants to lands, that the successful claimant was *not* holding said land as a tenant or under a testamentary right, but was holding it under a valid conveyance *in praesenti,* is final and conclusive in a proceeding instituted by the state for the assessment of a collateral inheritance tax.

**TAXATION:** Collateral Inheritance Tax—"Transfers Made in Con-
3  templation of Death." Whether a transfer of property, made

for a valuable consideration in the form of a reasonable annuity to the grantor for life, is a *"transfer in contemplation of death,"* within the meaning of the Collateral Inheritance Tax Act, and therefore liable to a succession tax, *quaere.*

**STATUTES:** Construction—Retroactive Statutes. Principle recognized that, before a statute will be given a retroactive effect, the intent that it shall so operate must be clear.

*Appeal from Taylor District Court.*—H. K. EVANS, Judge.

### JANUARY 19, 1918.

THE plaintiff appeals from the order and judgment of the trial court establishing and confirming the assessment of an inheritance tax. The material facts are stated in the opinion.—*Reversed.*

*Haddock & Son,* for appellant.

*H. M. Havner,* Attorney General, and *C. A. Robbins,* Assistant Attorney General, for appellee.

WEAVER, J.—The property subjected by the trial court to the payment of an inheritance tax is land which for many years was owned in part by one A. J. Litteer and in part by his wife, Mary L. Litteer, both of whom are now deceased. On September 16, 1910, and in the lifetime of both Litteer and his wife, they entered into a written contract with the plaintiff, Ernest Lewis, in the following form:

1. TAXATION:
Collateral
Inheritance
Act: conveyances effective prior to grantor's death.

"Conway, Iowa.   September 16th, 1910.

"Contract and Article of Agreement, between A. J. Litteer and Mary L. Litteer, parties of the first part, and Ernest Lewis, party of the second part, agree and enter into the following: We, A. J. Litteer and wife, parties of the first part, agree to give, will and bequeath, at the death of the last one of us living, our farm of 420 acres known as the A. J. Litteer farm one and one-half miles

south of Conway, 260 acres being in Clayton Township and 160 acres being in Marshal Township, Taylor County, Iowa, to said party of second part, Ernest Lewis, our nephew, we considering said second party an heir as though he were our son by blood and birth, farm to be as described according to Plat Book of Taylor County, Iowa. For and in consideration of which the said second party agrees to pay an allowance of twelve hundred dollars per year to said first parties during their lifetime or the lifetime of either of them. The said second party further agrees to take same care of said first parties should they or either of them become enfeebled in mind or body as though they were his own parents by blood. This contract to be in full force and effect from date.

"Parties of the first part:

> "A. J. Litteer.
> "Mary L. Litteer.

"Second party:

> "Ernest Lewis.

"Witnesses:

> "Claud Johnston.
> "J. B. Dant."

This contract seems to have been rewritten, in substantially like terms, under date of September 24, 1910. At the date of this contract, plaintiff was, and for several years had been, in possession of the land under an agreement of lease, wherein Litteer furnished the capital necessary to carry on the farm and plaintiff undertook to account for one half the income or profits. Thereafter, Litteer and wife having both died, litigation ensued between Lewis and the collateral heirs of the Litteers, over the validity and effect of such instrument. The history and incidents of that litigation are immaterial upon the question now up for consideration, except the fact that the controversy between the parties

thereto terminated in a final decree in plaintiff's favor, from which we quote the following:

"The court finds for the cross-petitioner, Ernest Lewis, on the contracts known in the record as Exhibits 1 and 2, and finds that said contracts were executed by A. J. Litteer in his lifetime for a valuable consideration, and that they conveyed the real estate referred to or described therein to the cross-petitioner, Ernest Lewis, as of the date of said contracts, to wit, on September 16th, 1910, and that said Lewis at that time entered into possession under said contract. * * * It is therefore ordered, adjudged, and decreed by the court that Ernest Lewis is the owner in fee simple of the following described real estate, to wit: * * * And that the title to said land be quieted in him against the plaintiffs and defendants, and that each of them and all persons claiming by, through, or under them or any of them, and that all taxes against said real estate shall be paid by said Ernest Lewis, and that all parties other than Ernest Lewis are forever barred and estopped from having or claiming any interest in said real estate adverse to the estate of Ernest Lewis."

Thereafter, the treasurer of state having laid claim to an inheritance or succession tax upon the property in question, the district court entered a supplementary finding or judgment, sustaining the claim and fixing such tax at $1,442.29. The plaintiff appeals.

The pertinent provisions of the inheritance tax statute (Section 1467, Code Supplement, 1907), as it stood at the date of the instruments which are the source of plaintiff's title, are as follows:

"Sec. 1467. All property within the jurisdiction of this state * * * which shall pass by will or by the statutes of inheritance of this or any other state, or by deed, grant, sale or gift made or intended to take effect in possession or in enjoyment after the death of the grantor or donor.

\* ˙\* \*   shall be subject to a tax of five per centum of its value."

Subsequent to the date of said instruments, but before the death of Litteer, this statute was amended by inserting therein, after the word "gift," the following: "or transfer made in contemplation of the death of the donor." See Chapter 68, Acts of the Thirty-fourth General Assembly.

The matters which we have recited, being all we regard as material upon this appeal, are without dispute in the record. The one question so presented for our consideration is whether, upon these conceded facts, the plaintiff acquired his title subject to the imposition of a succession tax. The property and title so acquired by the plaintiff were neither a testamentary devise nor a gift. It was (and has been so adjudged and determined) a presently valid and binding contract, by which the owners of the property bound themselves to transfer it to the plaintiff for a valuable considera‐ tion, and plaintiff, on his part, bound himself to make such grantors an annual payment, or "allowance," of $1,200, un‐ til the death of the survivor of them, and to maintain and care for them, should they become enfeebled in mind or body. This agreement, as the decree to which we referred finds, was at once made effective by the plaintiff's taking and re‐ taining possession of the land, and he remained in such pos‐ session and enjoyment until his obligation toward the Lit‐ teers was terminated by their death.   The fact that the

2. JUDGMENT: conclusive‐ ness: collat‐ eral pro‐ ceedings.

Litteers and the plaintiff, or either of them, spoke of the yearly payment which the latter bound himself to pay as "rent," is of no ma‐ terial consequence in this case.   The claim that the contract between them was one of lease only, and that the real relation between the parties was that of landlord and tenant, and the further claim that the writing was, at best, testamentary in character and without valid consideration, has been judicially determined

in plaintiff's favor, and, in our judgment, cannot be reliti-
gated in this proceeding. The assertion by the state of the
right to assess a succession tax involves a concession that
plaintiff did acquire title to the land. On the hearing in
this proceeding for the imposition of the tax, substantially
the only material evidence offered of the nature of the
plaintiff's title to the property and its acquirement was the
written instrument executed by the Litteers and himself,
and the effect thereof as determined by the same trial court
in the settlement of the Litteer estate, and the litigation
between plaintiff and the Litteer heirs which was incident
to such settlement. That evidence, which, in all material
respects, is undenied, shows that the title to the land was
adjudicated to have been transferred to the plaintiff by the
Litteers in their lifetime, and that plaintiff went into im-
mediate possession and enjoyment of the property under
the conveyance so made. This acquirement of title with the
right of possession and enjoyment, and the actual entry upon
such possession and enjoyment, preceded the death of the
grantors by more than a year. This adjudication, which is
not disputed, excludes the idea that the conveyance was
"made or intended to take effect in possession or enjoyment
after the death" of the grantors. On the contrary, it was
a transfer or conveyance which has been determined to be
*in praesenti,* with right of immediate possession and enjoy-
ment; and thereafter, the only right or interest which the
grantors had in the property was in the nature of an equita-
ble lien thereon, to secure to them the payment of the stip-
ulated consideration of $1,200 per year during life, and for
their care and support should they thereafter become inca-
pacitated to care for themselves. Under such showing, we
are satisfied that the property, in appellant's hands, was not
chargeable with a succession tax under the statute as it
then existed, the pertinent part of which we have already
quoted.

Whether the statute in its present form
would, if applicable, necessitate a different
result is, perhaps, immaterial. But we may
say that whether, for the purposes of the
statute as amended, "a transfer made in con-
templation of death" means anything more than a transfer
intended to effect a gift, or confer a voluntary benefit in an-
ticipation of death, and so effect a complete or partial dis-
tribution of the grantor's estate in his lifetime, instead of
relying therefor upon a will, is very doubtful. The fact that
many persons "prefer to be their own executors," and that
this inclination is often emphasized by a desire to avoid suc-
cession taxes, is a sufficient explanation for the amendment
to the statute. The reason which underlies the statute for
taxation of devices and of gifts made in anticipation of
death to others than the direct heirs of the testator or don-
or, would seem to exclude the thought of a succession tax
upon a good-faith transfer of property for a valuable con-
sideration paid in the grantor's lifetime, and to justify the
holding that a transfer made for a valuable consideration,
in the form of a reasonable annuity to the grantor for life,
is not a "transfer in contemplation of death," within the
terms of the statute.

*3. Taxation: Collateral Inheritance Tax: "transfers made in contemplation of death."*

In the case before us, the rights of plain-
tiff and the Litteers with respect to this
property were fixed and made irrevocable,
except by mutual consent, on the date when
the papers were executed and plaintiff acquired possession
thereunder; and, if we may assume that it was competent
for the state to thereafter enact or amend a statute to im-
pose a tax upon such transfers of title, the retrospective
character and effect of such enactment must clearly appear,
and, in the absence of anything showing such intent, the
courts will give it prospective effect only. There is nothing
in this amendment indicating any legislative intent to give

*4. Statutes: construction: retroactive statutes.*

it retrospective application; and it follows that, even if we were to construe it as being otherwise applicable to such a transfer as is here being considered, it would not govern the result of this appeal.

We hold, therefore, that the trial court erred in sustaining and confirming the claim of the state treasurer and adjudging the property in question liable to a succession tax, and the judgment to that effect is, therefore,—*Reversed.*

PRESTON, C. J., GAYNOR and STEVENS, JJ., concur.